IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> *ex rel.* JOSEPH M. THOMAS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DUKE UNIVERSITY, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 4:13-cv-17 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Jackson L. Kiser <br>      Senior United States District Judge |

Before me is Defendants Duke University ("Duke"), Duke University Health Systems, Inc. ("DUHS"), and Dr. William M. Foster's Motion to Transfer.[1] [ECF No. 68]. The issue was fully briefed, and the United States filed a Statement of Interest in opposition of the Motion. [ECF No. 94]. I held oral arguments on March 21, 2017. For the reasons stated below, I will grant the Motion to Transfer this case to the United States District Court for the Middle District of North Carolina.

I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Relator Joseph M. Thomas initiated this *qui tam* action on May 17, 2013, alleging that Defendants violated the False Claims Act ("FCA"). 31 U.S.C. § 3729 *et seq*; (s*ee generally* Compl., May 17, 2013 [ECF No. 1].) On November 11, 2015, Relator filed an Amended Complaint which remained under seal while the U.S. Attorney's Office for the Western District of Virginia ("USAO-WDVA") investigated and decided whether to intervene. (Am. Compl., Nov. 13, 2015 [ECF No. 25] (hereinafter "the Complaint").) Relator's suit alleges that Defendants knowingly falsified medical research data in order to obtain federal grants from various agencies,

---

[1] The remaining Defendant, Erin Potts-Kant, did not participate in these proceedings.

including the Environmental Protection Agency and National Institutes of Health. (*See* Am. Compl. ¶¶ 346–402.)

While none of the alleged events took place in the Western District of Virginia ("the WDVA"), the FCA has a broad venue provision which allows venue in "any judicial district in which . . . *any one* defendant can be found, resides, [or] transacts business . . . ." 31 U.S.C. § 3732(a) (emphasis added). Relator alleges that "Duke University solicited and enrolled students from the [WDVA], advertised in the [WDVA], [and] participated in academic activities in the [WDVA] . . . . Likewise, DUHS transacted business at its Cardiovascular Surgery of Danville clinic in Danville, VA." (Am. Compl. ¶ 12.) DUHS is a subsidiary of Duke. (*Id.* at ¶ 20.)

At the time of the alleged events, Relator was a Laboratory Research Analyst in the Pulmonary, Asthma and Critical Care Division of Duke University Health Systems ("the Pulmonary Division"). (Am. Compl. ¶ 18.) Relator resides in North Carolina. (*Id.* at ¶ 16). Appearing *pro se*, Defendant Erin Potts-Kant resides in Durham, but she has not joined her co-Defendants' Motion.[2] Potts-Kant was a Clinical Research Coordinator in the Pulmonary Division, (*id.* at ¶ 23), and is charged with directly manipulating the research in question. (*Id.* at ¶ 156.) Defendant William M. Foster, who also resides in the MDNC, was a Research Professor of Medicine in the Pulmonary Division and was Potts-Kant's direct supervisor. (*Id.* at ¶ 24–25.)

On August 8, 2016, nearly three and a half years after Relator filed his Complaint, the United States notified this Court that it would not exercise its right to intervene in this suit as provided by 31 U.S.C. § 3730(b)(4). (Notice, Aug. 8, 2016 [ECF No. 35]). Accordingly, I entered an Order unsealing the Complaint and allowing Relator to proceed on behalf of the United States. (Order, Aug. 9, 2016 [ECF No. 36].) Duke, DUHS, and William Foster, filed a motion to

---

[2] Potts-Kant sent a letter informing the Court that she would not be able to attend oral arguments due to work and family obligations. (Letter, March 20, 2017 [ECF No. 104].)

transfer this case to the Middle District of North Carolina ("the MDNC") on January 4, 2017 [ECF No. 68]. Relator filed a response, opposing the Motion, [ECF No. 92], and Defendants filed their Reply on February 24, 2017. [ECF No. 102]. The United States filed a Statement of Interest in opposition of Defendants' Motion. (Statement of Interest, Feb. 10, 2017 [ECF No. 94].)

## II. STANDARD OF REVIEW

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." It is well settled that "[d]ecisions whether to transfer a case pursuant to 28 U.S.C. § 1404(a) are committed to the discretion of the transferring judge." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991). In determining whether transfer is proper, a court should consider four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The movant has the burden of showing that a transfer is proper under the circumstances. *Gen. Creation LLC v. Leap Frog Enterprises, Inc.*, 192 F. Supp. 2d 503, 504 (W.D. Va. 2002). Transfer will not be granted if it would only shift the inconvenience to the non-moving party. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007). The plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant. *Alpharma, Inc. v. Purdue Pharma L.P.*, 634 F. Supp. 2d 626, 632 (W.D. Va. 2009).

## III. DISCUSSION

### A. The United States' Status as a Party

Before turning to the merits of Defendants' Motion, I want to address the United States' position in this litigation. The Government filed a Statement of Interest opposing the Motion to Transfer. They have a statutory right to do so. 28 U.S.C. § 517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States. . . .") At oral arguments, however, I rejected the Government's request to argue against the Motion to Transfer. I did so because the United States, by virtue of declining to intervene, is not a party to this litigation. While the United States remains the real party in interest, its ability to direct the course of the litigation is highly limited. *See United States v. Whyte*, No. 4:12-cr-00021-002, 2017 WL 377949, at *4 (W.D. Va. Jan. 26, 2017) ("[I]f the government elects not to intervene [in an FCA case], it retains no right to control the litigation in any meaningful way. . . . It is entitled to receive pleadings and deposition transcripts, but no more.") (citing 31 U.S.C. § 3730(c)(3)). At oral arguments, the Government asserted that it had issued a "no decision" in terms of intervention, and that a request to intervene was in the process of being approved by "Main Justice" in Washington, D.C.

The statute could not be clearer: the Government is either in or out. *See* 31 U.S.C. § 3730(b)(4) (giving the Government the option to either "proceed with the action" or "notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action."). There is no middle-ground. The Government declined to intervene, and while it may change its decision and seek to intervene at a later date, it cannot do so as a matter of right. *Id.* at § 3730(c)(3) (requiring the Government to seek leave to intervene

4

once it has initially declined to do so). As a result, the United States' preferred forum has no bearing on this Court's decision, and even if it did, the United States' argument is unconvincing.

The United States argues that the U.S. Attorney's Office for the Western District of Virginia ("USAO-WDVA") has spent years investigating this case, and if this case was transferred, new prosecutors in the MDNC would need to start "from scratch." This conflicts with Defendants' assertions that attorneys, agents, and investigators for USAO-WDVA have interviewed witnesses all over the country, and that the bulk of the witness interviews took place in Durham. The United States' argument that it would have to restart its investigation if the Motion is granted seems exaggerated. U.S. Attorney's Offices regularly coordinate on matters across jurisdictional lines. Given that attorneys from USAO-WDVA reportedly went to Durham multiple times to conduct witness interviews and participate in a settlement conference, it would be a minimal burden to litigate in North Carolina. The local rules of the MDNC would not bar an AUSA from the WDVA to appear before an MDNC court. *See* Middle District of North Carolina, Local Rule 83.1(c)(1) ("Federal government attorneys representing the interests of the United States are not required to secure local counsel.). Until the United States actually intervenes, its role in this case is limited.

### B. Defendants' Motion to Transfer

For the convenience of parties and witnesses [and] in the interest of justice," a case may be transferred "to any other district or division where it might have been brought . . . ." 28 U.S.C. 1404(a). The False Claims Act has a broader venue provision, allowing a plaintiff to bring an FCA action "in any judicial district in which . . . any one defendant can be found, resides, [or] transacts business . . . ." 31 U.S.C. § 3732(a). No party contests that this case could have

5

originally been brought in the Middle District of North Carolina. The only question before me is whether a discretionary transfer is appropriate.

A court should consider four factors when deciding whether to request a motion to transfer: (1) deference afforded to the plaintiff's choice of forum; (2) convenience to the witnesses; (3) convenience to the parties; and (4) the interests of justice. *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). I will address each factor in turn.

### 1. Deference to Plaintiff/Relator

When it comes to venue, a defendant is typically at the mercy of the plaintiff. "[T]he plaintiff's choice of forum should be given great deference and it is the defendant's 'burden to disturb the plaintiff's choice of forum by showing that the balance of equities is in [its] favor [and] that judicial economy and convenience to all parties favor suit in another forum.'" *Se. Textile Machinery, Inc. v. H. Warshow & Sons, Inc.*, No. 4:05cv00066, 2006 WL 213723, at *2 (W.D. Va. Jan. 27, 2006) (quoting *Glamorgan Coal Corp. v. Ratners Grp., P.L.C.*, 854 F. Supp. 436, 437–38 (W.D. Va. 1993)). A plaintiff's choice of forum deserves less weight when "(1) the plaintiff chooses a foreign forum, and (2) the chosen venue has little connection to the cause of action." *Gen. Creation LLC v. Leapfrog Enterprises, Inc.*, 192 F. Supp. 2d 503, 505 (W.D. Va. 2002)

At least one district court from the Fourth Circuit has held that this deference is even more limited in a *qui tam* action where the real party in interest is the United States. *See United States ex rel. Howard v. Harper Constr. Co.*, No. 7:12-cv-215-BO, 2015 WL 9463103, at *2 (E.D.N.C. Dec. 28, 2015); *see also United States ex rel. Adrian v. Regents of the Univ. of*

6

*California*, No. C 99-3864, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002); *United States ex rel. LaValley v. First Nat'l Bank of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985).

In the present case, n*one* of the operative facts took place in the WDVA. Relator has asserted proper venue by pointing out that Duke University's athletic teams compete in the WDVA, and Duke University Health System ("DUHS") operates the Cardiovascular Surgery of Danville Clinic. (Am. Compl. ¶ 12). While these contacts are sufficient to satisfy the FCA's liberal venue provision, they have no connection to the present case.

Relator concedes that he is entitled to less deference, but he nevertheless asserts that even in cases such as *Adrian*, the relator was entitled to *some* deference. I agree to the extent that a plaintiff's choice of forum is always relevant to the transfer analysis, but the circumstances of this case warrant little deference be given to Relator's choice. Previously, I noted that a plaintiff gets less deference when there is little connection between the facts and the foreign forum. *Se. Textiles*, 2006 WL 213723, at *2. Here, neither side has identified *any connection* between the WDVA and Relator's allegations. Relator filed his suit in a foreign forum, none of the relevant events took place in the WDVA, and Relator is litigating this claim on behalf of the United States, the real party in interest. For these reasons, any deference to Relator is minimal and easily outweighed by other considerations.

2. Witness Convenience and Access

"The ability to conduct a trial in a manner that does not 'unduly burden' the witness is of central importance in making a trial easy, expeditious, and inexpensive." *Id.* at *3 (quoting *Kollmorgan Corp. v. Yaskawa Electric Corp.*, 169 F. Supp. 2d 530, 538 (W.D. Va. 1999)). One court in the WDVA found that a 30–40 minute difference in travel time was "inconsequential." *See Russell v. Wright,* No. 3:11-cv-00075, 2012 WL 868773, at *5, *5 n.6 (W.D. Va. Mar. 13,

7

2012) (declining to transfer a case from the Charlottesville Division to the Lynchburg Division of the WDVA). Relator has identified twenty "key player" witnesses. Eleven are current employees of Duke and reside in Durham, NC. Eight are former Duke employees who live throughout the country, and one is deceased. (*See* Gibson Decl. ¶ 16, Dec. 27, 2016 [ECF No. 69-4].) The MDNC has three courthouses in Greensboro, Durham, and Winston-Salem. At oral arguments, counsel for the Duke and DUHS stated that cases in the MDNC are randomly assigned. In other words, it is impossible to tell where this case will end up if it transferred.

The eleven Duke employees who live near Durham are equidistant from Danville and Winston-Salem. *Compare* Driving Directions from Durham, NC to Winston-Salem, NC, Google Maps, https://goo.gl/maps/ZzkZzXftYSk (85 minutes of travel time), *with* Driving Directions from Durham, NC to Danville, VA, Google Maps, https://goo.gl/maps/HGy1iEbVrdT2 (80 minutes of travel time). It takes roughly one hour to drive from Durham to Greensboro. *See* Driving Directions from Durham, NC to Greensboro, NC, Google Maps, https://goo.gl/maps/QTapy6UvK5w. Of course, this case may be assigned to the Durham courthouse, which would provide the greatest convenience. There remains, however, a strong chance that the witnesses located in Durham will have to travel to either Greensboro or Winston-Salem. At most, this will save 20 minutes of travel time if the proceedings are held in Greensboro rather than Winston-Salem. This additional inconvenience is negligible and favors neither party.

There are also eight witnesses who live outside of Virginia and North Carolina, but the parties disagree as to whether these witnesses should be considered party or non-party witnesses. The convenience of non-party witnesses is given greater weight than the convenience of party witnesses. *Beacon Wireless Sols., Inc. v. Garmin Int'l, Inc.*, No. 5:11-cv-00025, 2011 WL

8

4737404, *5 (W.D. Va. Oct. 5, 2011). This is far from being a universal rule of law given that *Beacon Wireless* only relies on authority from the Eastern District of Virginia. *See, e.g.*, *USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 1:09cv47, 2009 WL 1227867, at *4 (E.D. Va. May 4, 2009); *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007). These cases only held that the convenience of non-party witnesses should be given greater weight, but it is not clear just how much additional weight is warranted. *But see ASD Specialty Healthcare, Inc. v. Letzer*, No. 2:10-CV-388-WKW [WO], 2010 WL 2952573, at *4 (M.D. Ala. July 26, 2010) (finding that the convenience of non-party witnesses deserves "considerably more" weight than party witnesses).

Even if I accept Relator's argument that every employee of a named party is automatically a party witness,[3] I find that it makes little difference in this case because it would only affect four witnesses who are both Duke employees and reside outside of North Carolina. Unlike Danville, Greensboro, Durham, and Winston-Salem are all serviced by commercial airports. If the case was tried in Danville, these witnesses would need to fly into one of North Carolina airports, and drive to Danville. The driving times from those cities' respective airports

---

[3] Relator relies on a string of cases from the Eastern District of Virginia which claim that an employee of a named party is assumed to be a party witness for purposes of a Motion to Transfer. *See, e.g., Va. Innocation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 871 (E.D. Va. 2013); *Samsung Electronics Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). This is a broad assumption, and I will not apply it here.

      The purported rule that all employees of a party are themselves party witnesses is based on an assumption that employees are more willing to travel untold lengths to testify in defense of their employer. *See, e.g.*, *Samsung*, 386 F. Supp. 2d at 718. While this might be true for someone at a managerial or executive level, it seems unlikely that the average employee in a massive organization such as Duke University would be willing forego all other obligations in order to travel and testify in Duke's defense. A party is "one by or against whom a lawsuit is brought." *Party*, Black's Law Dictionary (10th ed. 2014). An interested party is "a party who has a recognizable stake (and therefore standing) in a matter." *Interested Party*, Black's Law Dictionary (10th ed. 2014). Neither of these definitions could be applied to *every* Duke employee, making Relator's purported rule far too broad. While an employee has an interest in their employer remaining solvent and in compliance with the law, this is not the type of interest that would make every employee an interested party in every lawsuit involving their employer.

would be roughly equal to those described above. These witnesses would need to obtain lodging and transportation regardless of whether they travel to Danville or North Carolina.

There is no doubt that having to drive to Danville after having flown from either Texas, Arizona, or California is an additional inconvenience. Defendants fail to note, however, that Relator also plans to bring in witnesses from outside of North Carolina and Virginia. Relator plans to subpoena agency officials and editors of academic journals located through the country. (*See* Relator's Br. in Resp. to Mot. to Transfer at 14–16, Feb. 6, 2017 [ECF No. 92].) Any inconvenience in travel would apply to them as well. Because any inconvenience for witnesses traveling to Danville would be borne equally by both Relator and Defendant, I find that this factor favors neither side.

### 3. Convenience to the Parties

Defendants argue that this case should be transferred to the MDNC in large part because they believe that the case was originally filed in the WDVA in order to be more convenient for Relator's Roanoke-based counsel. Assuming this is true, it does not mean that this case needs to be transferred. Transfer must do more than simply shift the inconvenience from one party to another. *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007). In support of their argument, Defendants cite *United States ex rel. Urquilla-Diaz v. Kaplan University*, No. 8:07-cv-669-T-33TGW, 2009 WL 763747 (M.D. Fla. March 23, 2009). That FCA case was ultimately transferred from the Middle District of Florida to the Southern District of Florida. *Id.* at *3. While it is true that the only apparent connection to the chosen forum was the location of the relator's counsel, the court did not transfer the case on that basis alone. As I do here, the court considered several factors, including convenience of the witnesses and the location of documents

and other evidence. After conducting a thorough analysis, the court found that the factors favored transfer. *Id.*

In keeping this case in the WDVA, Duke, DUHS, and Foster would not experience any great inconvenience that would not be equally borne by Relator if this case was transferred to the MDNC. Defendant Potts-Kant, however, is likely to be greatly inconvenienced if this case remains in the WDVA. In her letter to the Court, Potts-Kant explains that she cannot travel to the WDVA due to work and family obligations. [ECF No. 104]. Alone, this would likely be insufficient to justify transfer given that it is not uncommon to juggle these obligations with legal responsibilities. Potts-Kant would, however, need to hire counsel licenses in Virginia because her current counsel is only admitted to practice in North Carolina.[4] *Id.* Potts-Kant has limited resources, and forcing her to hire additional counsel would be a great burden.[5] As a result, I find that this factor weighs in favor of transfer.

4. Interest of Justice

The interest of justice is an important factor and can be decisive in determining whether to grant a motion to transfer. *See* 15 Wright, Miller, Cooper, & Freer, *Federal Practice and Procedure* § 3854 (4th ed. 2013) ("[I]t has long been clear that the interest of justice is a factor (albeit an amorphous and somewhat subjective one) to be considered on its own and that is very important."); *see also Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (The interest of justice encompasses several considerations, including "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness

---

[4] Though not clear, Potts-Kant North Carolina counsel may have been hired in connection with the criminal investigation that is ongoing in connection to the alleged events.

[5] In her letter to the Court, which all parties agreed could be considered, Potts-Kant expressed she could not *afford* Virginia-based counsel, making a Virginia-based trial all the more unfair to her.

11

in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law.").

Docket congestion was addressed by both parties, but it does not substantially weigh in favor of either side. While the WDVA has a lighter caseload, the difference is negligible. In a twelve month period ending on June 30, 2016, the WDVA had 1,675 total filings. (Relator's Br. Ex. M, Feb. 6, 2017 [ECF No. 92-13].) The MDNC has 1,825. (Relator's Br. Ex. L, Feb. 6, 2017 [ECF No. 92-12].) On average, in the WDVA, it took 9.7 months from a date of filing for a case to receive a final disposition. [ECF No. 92-13]. In the MDNC, it took 10.5 months. [ECF No. 92-12]. This is a negligible difference, and it does not outweigh other considerations that weigh in favor of transfer.

One of the considerations that weigh heavily in favor of transfer is the MDNC's interest in hearing this case. It is rare that a locality has a notably greater interest in adjudicating a given case, but this is a unique situation. Without question, Duke is a huge employer and market force in Durham. *See* Greater Durham Chamber of Commerce, *Economic Profile*, http://durhamchamber. org/economic-development/economic-profile (showing that Duke University provides Durham with nearly 35,000 jobs, three times that of the next largest employer); *see also* Fed. R. Evid. 201 (allowing the Court to take judicial notice of adjudicative facts). The city is inextricably tied to Duke. Whether Duke has engaged in a scheme to knowingly defraud the United States to the tune of over 100 million dollars is an issue of tremendous local importance. At oral arguments, Relator's counsel argued that because this case concerns all taxpayers, residents of the WDVA have an interest in hearing this case. While I agree that the Defendants' alleged behavior should concern all taxpayers, the interest of the people of Durham and the MDNC to hear this case goes far beyond their status as taxpayers.

12

## IV. CONCLUSION

Relator, acting on behalf of the United States, the real party in interest, filed this action in a foreign forum where none of the alleged facts took place, and where none of the parties or witnesses are located. In light of this, Relator's choice of forum gets minimal deference. While my decision would not disproportionately inconvenience Relator or the parties who have joined the Motion, keeping this case in the WDVA would be a notable inconvenience for Potts-Kant. Moreover, after considering the interest of justice in this case, I find that the Middle District of North Carolina and Durham have a notably greater local interest in deciding this case given that it involves significant allegations of fraud against a major university in the district. In light of these facts, transfer is appropriate, and I will grant Defendants' Motion.

Entered this 28th day of March, 2017.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

13

Case 4:13-cv-00017-JLK-RSB   Document 107   Filed 03/28/17   Page 13 of 13   Pageid#: 2509